UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES GENARIE and THERESA COXON,<br><br>              Plaintiffs,<br><br>     v.<br><br>PRD MANAGEMENT, INC., et al.,<br><br>              Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil Action<br>No. 04-2082 (JBS)<br><br>**OPINION** |

APPEARANCES:

S. Robert Freidel, Jr., Esq.
Christina Y. Emery, Esq.
THE LAW OFFICES OF S. ROBERT FREIDEL, JR.
University Executive Campus
151 Fries Mill Road, Suite 303
Turnersville, New Jersey 08012
     Attorneys for Plaintiffs

Dennis J. Crawford, Esq.
Robert G. Feldman, Esq.
THE LAW OFFICES OF DENNIS J. CRAWFORD
619 South White Horse Pike
Audubon, New Jersey 08106
     Attorneys for Defendants

**TABLE OF CONTENTS**

I.   **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . 4

     A.   **The Description of Genarie's Job and His Actual Job
          Duties** . . . . . . . . . . . . . . . . . . . . . . 5

     B.   **Employment Status of Plaintiff, Theresa Coxon** . . . 10

     C.   **The Present Litigation** . . . . . . . . . . . . . . 11

II.  **SUMMARY JUDGMENT STANDARD OF REVIEW** . . . . . . . . . . 12

1

III.    DISCUSSION . . . . . . . . . . . . . . . . . . . 14

    A.    Plaintiffs' Claims under the Fair Labor Standards Act
          (Counts I - VI) . . . . . . . . . . . . . . . . 14

          1.    The Coverage of the FLSA . . . . . . . . . 14

          2.    Whether Defendants are an Enterprise Subject to
                the FLSA . . . . . . . . . . . . . . . . . 20

                a.    Defendant Mullen Manor . . . . . . . 22

                b.    Defendant PRD Management . . . . . . 24

          3.    Whether Coxon is an "Employee" of Defendants and
                Covered under the FLSA . . . . . . . . . . 26

                a.    Coxon Fits the Definition of an "Employee"
                      . . . . . . . . . . . . . . . . . . . 27

                b.    Coxon was Not a Volunteer for PRD Management
                      . . . . . . . . . . . . . . . . . . . 29

          4.    Whether Plaintiffs' FLSA Claim Should be Dismissed
                because the Benefits are De Minimis . . . . 31

          5.    Whether Genarie's Time Spent "On-Call" is
                Compensable under the FLSA . . . . . . . . 35

          6.    Whether Plaintiffs' Claims are Limited to a Two-
                year Statute of Limitation . . . . . . . . 36

          7.    Plaintiffs' FLSA Claim Based on Defendants'
                Alleged Failure to Maintain Employment Records.
                . . . . . . . . . . . . . . . . . . . . . 40

          8.    Plaintiffs FLSA Claim Based on Defendants' Alleged
                Failure to Pay Income Tax Withholdings, Social
                Security, and Unemployment Taxes on the Value of
                Lodging . . . . . . . . . . . . . . . . . 42

    B.    Plaintiffs' Claims under the New Jersey Wage and Hour
          Law (Counts VII through XII) . . . . . . . . . . 44

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . 48

**SIMANDLE,** District Judge:

The plaintiffs, who were live-in maintenance workers in an apartment complex, have asserted claims for wages and benefits arising under the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL"). This matter comes before the Court upon cross-motions for summary judgment filed by Plaintiffs Charles Genarie and Theresa Coxon (hereafter "Genarie" and "Coxon," respectively) and Defendants, PRD Management, Inc., Mullen Manor Apartments, and James McGrath. Both Defendants' motion and Plaintiffs' cross-motion will be granted in part and denied in part. Defendants' motion will be granted as to the issues of (1) whether Genarie's time spent on-call is compensable under the FLSA; (2) whether Defendant Mullen Manor is exempt under claims arising under the FLSA; (3) whether Plaintiffs' claims under the FLSA and NJWHL, with respect to compensation for services performed prior to May 3, 2002, are time barred; (4) whether Defendant PRD Management was required to pay income tax withholdings, social security and unemployment taxes on the value of Plaintiffs' apartment; and (5) whether Plaintiffs may proceed with a claim of record-keeping violations under the NJWHL. Plaintiffs' cross-motion for summary judgment will be granted as to the issue of the employment status of Coxon. Because the Court finds that there are genuine issues of material fact with respect to the remaining issues raised in Defendants' motion and

Plaintiffs' cross-motion both Defendants' motion and Plaintiffs'
cross-motion will otherwise be denied in part.

## I. BACKGROUND

Beginning in September of 2001 and continuing through
September of 2003, Plaintiff Charles Genarie worked as a live-in
maintenance worker at an apartment building known as Mullen Manor
located in Sicklerville, New Jersey.[1] (See Lease Agreement
between PRD Management[2] and Charles Genarie ("Lease Agreement"),
Certification of Robert Feldman, Esq. ¶ 5, Ex. E. to Defendants'
Statement of Material Fact.)  In exchange for his services as a
live-in maintenance worker, Genarie did not receive cash payments
or benefits. (Id.) Instead, Genarie, his fiancé (Plaintiff
Theresa Coxon) and Coxon's daughter were permitted to live rent
free in an apartment in Mullen Manor. (Id.) According to the

_____

[1]    According to Defendants, at all relevant times (i.e.,
2001 through 2003), PRD Management served as a management company
for 13 housing facilities all of which were located in New
Jersey. (Certification of James McGrath, Def.'s Statement of
Material Facts, Ex. A.) Plaintiffs, however, argue that PRD
Management also managed properties in Pennsylvania.  (Deposition
Transcript of Beverly Nahill at 55.)  Specifically, Plaintiffs
point to the testimony of Beverly Nahill, office manager for PRD
Management, who testified that PRD Management operated a building
in Philadelphia, Pennsylvania called Casa Farnese. (Id.) PRD
Management's web site states that PRD Management was operating
Casa Farnese in 2003. (Certification of Christina Y. Emery ¶ 22,
Ex. V.)

[2]    PRD Management is a management company that manages
and staffs federally subsidized housing.  (Feldman Cert. ¶ 8, Ex.
H.; Nahill Depo Tr. at 55.) PRD Management manages the property
known as Mullen Manor. (Id.)

Lease, the apartment had a rental value of $850 per month. (Id.) As part of the arrangement, PRD Management also paid all water, heat and sewer utility expenses associated with the apartment. (Id.) According to Defendants, the apartment was furnished to Plaintiffs for the convenience of Defendants (i.e., so that the live-in maintenance employee would be on-premises in the event emergencies arose after normal business hours). (Id.)

## A. The Description of Genarie's Job and His Actual Job Duties

The Lease Agreement sets out Genarie's responsibilities as a live-in maintenance person at Mullen Manor. (See Attachment No. 3. to Lease Agreement.) Captioned as "Regular Duties," Genarie's duties were broken down into three main categories of work: monitoring activities, maintenance and cleaning duties, and "on-call" duties. (Id.) Genarie's responsibilities included (1) checking all security alarms and boilers and surveying the premises of Mullen Manor on a daily basis (monitoring activities); (2) removing trash, mopping floors, and vacuuming (maintenance and cleaning duties); and (3) investigating emergency calls when on-call ("on-call duties.") (Id.) Under the caption "maintenance and cleaning duties" was a daily schedule of tasks Genarie was required to perform Monday through Saturday while the "monitoring activities" included a list of tasks for Genarie to perform each weekday night and each weekend morning and evening. (Id.) In addition to the list of specific tasks,

under the heading of "monitoring duties," Genarie was required to

"[p]erform other duties as may be assigned from time to time."

(Id. ¶ A.11 of Attachment No. 3.)[3]

Central to Plaintiffs' Complaint is that (1) performance of

the job duties listed on Attachment No. 3 took considerably

longer than the 14 hours per week officers of Defendant PRD

Management represented to Genarie that the duties would take, and

(2) Defendants regularly required Plaintiffs to perform duties

that Plaintiffs contend were outside the scope of the Lease

Agreement, without paying additional compensation. (Emery Cert. ¶

1, Ex. A, Deposition Transcript of Charles Genarie at 28, dated

2/10/05; see also Emery Cert. ¶ 12, Ex. L). Plaintiffs testified

that a newspaper advertisement for the live-in maintenance person

position stated that the job entailed performing 14 hours of

maintenance per week. (Id. at 28; see also Emery Cert. ¶ 12, Ex.

L.)  During his interview with James McGrath (president and owner

of Defendant, PRD Management), Genarie was told that his duties

were strictly to clean the buildings on Mullen Manor's premises

and carry a beeper during his "on-call" time in order to respond

to emergencies. (Genarie Depo. Tr. 32-33, dated 2/10/05.)

According to Genarie, however, completing the required tasks

---

[3]  The meaning and scope of this provision is central to the
dispute between the parties.  As discussed more fully below, see
note 4, infra, Plaintiffs and Defendants have widely disparate
interpretations of the meaning and scope of this provision.

listed in Attachment No. 3 took significantly longer than 14 hours per week. (Id. at 66.) Instead, it generally took Genarie approximately 21 hours and 45 minutes each week to perform his assigned tasks. (Id.)

In addition to working nearly 22 hours per week on tasks designated in the Lease Agreement, Genarie was regularly assigned work by Walter Grossmick, Mullen Manor's superintendent. (Emery Cert. ¶ 3, Genarie Dep. Tr. at 39, dated 3/29/05.) According to Genarie, most if not all of the additional work assigned by Grossmick was outside of the job duties listed in the Lease. (Id. at 39-41.) According to Plaintiffs, Grossmick's practice of assigning extra-contractual work to Genarie continued despite several meetings between Genarie, Grossmick and a group of managers from PRD Management in which Grossmick was explicitly told to stop assigning Genarie extra work. (Emery Cert. ¶ 7. Ex. G, Deposition Transcript of James McGrath at 35.)

Genarie was required to start his work day at Mullen Manor by checking one of two in-boxes that contained work orders directing him to perform certain tasks. (Genarie Depo. Tr. at 46, dated 2/10/05.) Work assigned in this manner was supplemental to the tasks contained on Attachment No. 3. These work requests, which were generally prepared by either Felicia McCann (administrator to McGrath), Grossmick, or a resident of Mullen Manor requesting that certain maintenance or repair work be

performed (see id. at 44-46,) often requested that Genarie

perform time consuming tasks such as stripping and waxing floors,

digging ditches outside of the building, painting halls and

walls, and cleaning recently-vacated apartments in preparation

for the arrival of a new tenant. (Pl.'s Supp. Br. at 5-6,

Certification of Christina Y. Emery, Esq., Ex. AA.)

Plaintiffs have supplied a detailed breakdown of the hours

worked and task performed that they contend were extra-

contractual jobs assigned to both Coxon and Genarie during their

tenancy at Mullen Manor. (Emery Cert., Ex. AA.) According to

Plaintiffs' calculations, Genarie worked more than 2,522 hours on

extra-contractual duties during his tenancy. (Id.) These totals

are in addition to the 21 hours and 45 minutes it took for

Plaintiffs to complete their weekly duties outlined in the Lease

Agreement. (Id.)[4] According to Plaintiffs, Coxon worked a total

---

[4] Plaintiffs and Defendants disagree about the scope of
Genarie's job duties as established in Attachment No. 3 to the
Lease Agreement. Genarie stated that he was regularly told to do
tasks outside the scope of the Lease Agreement such as stripping
and waxing floors, removing oil stains from the parking lot, and
weeding the apartment building's garden. (Genarie Depo. Tr. 43-
44, dated 3/29/05.) Plaintiffs provide support for this assertion
through testimony of members of PRD Management's management team
who explicitly told Genarie that (1) Genarie was not required to
paint, strip or wax floors or clean the oil spots in the parking
lot and (2) that McCann and Grossmick were not to assign him any
of these tasks. (See Memo from Mary Anne Wolf to McCann, dated
June 27, 2002, Emery Cert. ¶ 13, Ex. M. and McGrath Depo. Tr. at
44-45.) Despite receiving these directions from their
supervisors, Grossmick and McCann continued to assign tasks to
Genarie that he deemed outside the scope of his contractual
duties. (Coxon Dep. Tr. at 103, dated 3/10/05.)

of slightly less than 400 hours performing work assigned to her during her tenancy. (Id.)

Genarie testified that the large amount of additional and extra-contractual work put upon him by Grossmick and McCann overwhelmed him. On several occasions, Genarie was forced to take time off from his full-time job at a trucking company in order to complete tasks assigned to him by Grossmick. (Genarie Depo. Tr. at 193-94, dated 2/10/05.) Genarie also testified that Grossmick once told him that he would lose his apartment if he did not take time off from his full-time job to complete work at Mullen Manor. (Id.)[5]

In addition to his weekly monitoring and maintenance duties and the additional tasks McCann and Grossmick assigned him, Genarie was expected to be "on-call" three out of every four weeks. (Id. at 25.) Being "on-call" meant that Genarie was required to remain close enough to Mullen Manor to respond to resident emergencies. (Id.) Genarie was paged approximately six times at his full-time job during his employment with PRD Management. (Id. at 24.) Genarie admitted, however, that if he was paged while at his full-time job, he would ask Grossmick to respond in his place. (Id. at 23-25.) In addition, at oral

---

[5] Defendants dispute this point, presenting evidence that Genarie voluntarily took time off from his full-time job in order to make up for his failure to perform his regular scheduled duties at Mullen Manor. (Feldman Cert. ¶ 11, Ex. K at 354.)

argument, counsel for Plaintiffs conceded that Genarie was generally free to do personal things while he was "on-call."

**B.    Employment Status of Plaintiff, Theresa Coxon**

Genarie claims that, from the start of Plaintiffs' tenancy at Mullen Manor, he and Coxon worked as a team to perform the multitude of tasks required by their supervisors. (Genarie Depo. Tr. at 52.)  To this end, both Plaintiffs considered Coxon to be an employee of Defendants. (Id. at 52.) Defendants, however, never considered Coxon to be an employee of either PRD Management or Mullen Manor. Rather, Defendants considered Coxon to be a volunteer who performed work assigned to Genarie in order to assist him in his duties. (Def.'s Br. at 20; see also Def.'s Supp. Br. at 11, n. 5.)  Defendants state that, because Genarie was required to work full-time during the week at a trucking company and all day on Saturday and Sunday at his part-time job, Coxon "pitched in" to assist Genarie. (Def.'s Br. at 20-21.) Plaintiffs dispute this and in support of their claim that Coxon was an employee of Defendants, point out that:

- Both Coxon and Genarie performed work at Mullen Manor and both had specific job duties. (See Deposition Transcript of Felicia McCann at 52.) For example, members of PRD Management's management team specifically asked Coxon to do certain cleaning jobs (e.g., apartment turnovers) rather than assigning such tasks to Genarie or Grossmick. (Genarie Depo. Tr. at 43., dated 3/29/05.)

- Both Coxon and Genarie attended the initial job interview and were required at certain meetings with PRD Management's management team. (Genarie Depo. Tr. at 31; McCann Depo. Tr. at 87.) At the meeting, Genarie and Coxon

10

discussed the employment arrangement with McGrath prior to
signing the Lease and McGrath told them they could work as
a team. (Genarie Depo. Tr. at 37-38, dated 2/10/05; Coxon
Depo. Tr. at 26.)

- Genarie and Coxon began working together on the tasks
  almost immediately after moving into Mullen Manor.
  (Genarie Depo. Tr. at 40, dated 2/24/05.) Coxon's
  participation did not start later or after Genarie
  determined he could not complete all required tasks as
  Defendants suggest. (Id.)

 - Both Coxon and Genarie completed work orders and weekly
   recap forms. (See Genarie Depo. Tr. at 114, 116, dated
   2/10/05.)

- Members of PRD Management's management evaluated and
  criticized Coxon's job performance (McCann Depo. Tr. at
  118-19,) and Coxon signed off on the work the two
  performed (Emery Cert. ¶ 25, Ex. Z.) and on time sheets.
  (Felman Cert. ¶ 10, Ex. J at 52-113.)

In addition, Plaintiffs point out that Felicia McCann admitted in

a deposition that both Genarie and Coxon worked in Mullen Manor

and had specific job duties. (McCann Depo. Tr. at 65.)  According

to Plaintiffs, Coxon worked a total of slightly less than 400

hours performing work assigned to her between September 2001 to

September 2003. (Emery Cert., Ex. AA.)

       **C.    The Present Litigation**

     After a number of complaints and disputes surrounding

Plaintiffs' job duties, Genarie was informed by attorneys for

Mullen Manor that his employment was being terminated for

"failure to perform duties" and that he was to vacate the

apartment by October 25, 2003.  (Feldman Cert. ¶ 6, Ex. F.)

Plaintiffs filed a Complaint on May 3, 2004 alleging that
Defendants violated (A) the Fair Labor Standards Act, 29 U.S.C. §
201 et seq. and (B) the New Jersey Wage and Hour Law, N.J.S.A.
34:11-4.1.  Defendants moved for summary judgment against
Plaintiffs on August 10, 2005.  Plaintiffs filed a cross-motion
for partial summary judgment on September 16, 2005 to which
Defendants timely replied on September 26, 2005. The Court heard
oral argument on the cross-motions on December 9, 2005. The Court
reserved decision and requested that the parties submit
additional briefing (1) on the issues of whether Defendant Mullen
Manor should be exempt as a non-profit under the Fair Labor
Standards Act and (2) a breakdown of the hours worked by both
Genarie and Coxon.[6]

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

Defendants and Plaintiffs have cross-moved for summary
judgment pursuant to Rules 56(b) and 56(a), Fed. R. Civ. P.,
respectively. A court may grant summary judgment when the
materials of record "show that there is no genuine issue as to
any material fact and that the moving party is entitled to

_____

[6]  On December 29, 2005, Plaintiffs filed a motion for leave
to amend/correct its Complaint in which Plaintiffs sought to add
a breach of contract claim [Docket Item No. 20]. On January 25,
2006, this Court granted Plaintiffs' motion for leave to amend
[Docket Item No. 25]. Because the parties did not brief this
issue in their cross-motions for summary judgment, this Court
does not address Plaintiffs' breach of contract claim in this
Opinion.

judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

The summary judgment standard does not change when, as here, the parties have filed cross-motions for summary judgment. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is
> entitled to summary judgment, and the making of such
> inherently contradictory claims does not constitute an
> agreement that if one is rejected the other is
> necessarily justified or that the losing party waives
> judicial consideration and determination whether
> genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998)

13

(citing <u>Ciarlante v. Brown & Williamson Tobacco Corp.</u>, 143 F.3d 139, 145-46 (3d Cir. 1988)).

**III.     DISCUSSION**

**A.     Plaintiffs' Claims under the Fair Labor Standards Act (Counts I - VI)**

In its Complaint, Plaintiffs allege that Defendants "failed to compensate" Plaintiffs for work performed in violation of the FLSA, 29 U.S.C. § 201 <u>et seq.</u>, (<u>see</u> Complaint ¶¶ 27, 33, 38, 43, 48, and 53), claiming Defendants violated the minimum wage, overtime, and record-keeping provisions of the FLSA. <u>See</u> 29 U.S.C. § 206(b), 207(a), 211(c), 215(a)(2), and (a)(5).  A plaintiff bringing a claim under the FLSA has the burden of proving each and every element of his or her claim. <u>See Samson v. Apollo Resources</u>, 242 F.3d 629, 636 (5th Cir. 2001).

**1.     The Coverage of the FLSA**

The FLSA extends coverage to employees by two means: (1) the employee himself may be engaged in commerce or in the production of goods for commerce (so-called "individual" coverage), <u>see</u> 29 U.S.C. § 207(a)(1) (1); or (2) the employee may be employed in an enterprise engaged in commerce or the production of goods for commerce (so-called "enterprise coverage.") <u>See</u> 29 U.S.C. § 203(s)(1).  Because Plaintiffs' counsel conceded at oral argument that Plaintiffs themselves are not engaged in interstate commerce, this Court need only determine whether Plaintiffs' claims are covered by the FLSA under "enterprise coverage."

14

To be covered by the FLSA, an "enterprise" must satisfy two criteria. First, the enterprise must have at least two employees that are (a) directly engaged in commerce, (b) in the production of goods for commerce, or (c) handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce. See 29 U.S.C. § 203(s)(1)(A)(i). Second, the enterprise's annual gross volume of sales made or business done must be greater or equal to $500,000. See id. at § 203(s)(1)(A)(ii). The FLSA defines an "enterprise" as "the related activities performed...by a person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). In the Third Circuit, to be considered an "enterprise," a business must satisfy three elements. The business must (1) be engaged in related activities, (2) under unified operation or common control, and (3) have a common business purpose. See id.; see also Reich v. Gateway Press, Inc., 13 F.3d 685 (3d Cir. 1994).

With respect to the first prong of the enterprise coverage test, an enterprise is covered by the FLSA if two or more employees are "directly engaged in commerce." 29 U.S.C. § 203(s)(1)(A)(i). An employee is "directly engaged in commerce" if he or she does work that regularly uses the channels of commerce, including employees who regularly use the interstate mail or telephone while performing other work. See Mitchell v. E.G. Shinner & Co., 221 F.2d 260 (7th Cir. 1955)(employees who

performed payroll accounting and purchasing duties at
headquarters of meat market with branches in four states were
engaged in commerce under the FLSA); <u>Preston v. Settle Down
Enter., Inc.</u>, 90 F. Supp. 2d 1267, 1274-75 (D. Ga.
2000)(employees who performed billing duties for company based in
Georgia but had employees in Texas were "engaged in commerce");
<u>see also</u> Ellen C. Kearns, <u>The Fair Labor Standards Act</u>, 109
(1999).  A plaintiff has the burden of proving that his or her
employer is "an enterprise engaged in commerce."  <u>See</u> <u>Samson</u>, 242
F.3d at 636.  Once an employee has met his burden of establishing
that the employer operated as an enterprise and has achieved the
requisite gross sales volume, all of that enterprise's employees
are covered by the Act irrespective of their individual
activities.  <u>See</u> <u>Jones v. Cadillac Condo. Assoc.</u>, 1989 WL 49156
at *4 (D. Col. 1989); <u>see also</u> <u>Marshall v. Murray</u>, 1979 U.S.
Dist. LEXIS 9811 (M.D. Pa. 1979).

Defendants argue that they are not covered by enterprise
coverage, claiming that neither Defendants PRD Management (who
provides management services for housing complexes), Mullen Manor
(which is a PRD Management-managed facility) or James McGrath
(the president of PRD Management) are individually or
collectively engaged in "commerce"[7] as defined in the FLSA.

---

[7]  Under the FLSA, "commerce" is defined as "trade,
commerce, transportation, transmission or communications among
the several states and any place outside thereof."  29 U.S.C. §

(Def.'s Br. at 13-14.) Specifically, Defendants point out that they are in the business of providing housing complexes for senior citizens, low-income families and physically challenged individuals in New Jersey and "[n]one of the Defendants individually produced goods that leave the State of New Jersey." (Id. at 14.)  In addition, according to Defendants, Defendants did not operate as an enterprise in a unified operation, common control or shared a common purposed with an annual gross volume in excess of $500,000 as required by 29 U.S.C. §203(s)(1)(A)(ii).

Plaintiffs argue that Defendants satisfy the test for enterprise coverage theory under 29 U.S.C. § 203(s). First, Plaintiffs argue that PRD Management, Mullen Manor and McGrath are properly considered an "enterprise" under Section 203(r)(1) as PRD Management and Mullen Manor were businesses conducted through "common control." (Pl.'s Br. at 6.) Plaintiffs support this argument by presenting statements from McGrath, president of PRD Management, that assert that all employees working at Mullen Manor (e.g. Felicia McCann and Walter Grossmick) are employees of PRD Management. (McGrath Depo. Tr. 14.)[8]

---

203(b).

[8]   In addition to McGrath's testimony that individuals working at Mullen Manor are PRD Management employees, Plaintiffs explain that, while the people who work at Mullen Manor received paychecks that list the name of the facility where they work, they are employed by PRD Management. (Nahill Dep. Tr. 38, 45-46.) Moreover, employees working at Mullen Manor received individual retirement accounts through PRD Management, and PRD Management

Plaintiffs argue that the PRD Management enterprise satisfies the first prong of the enterprise coverage theory test through its multiple, interrelated and centrally-controlled operations that involve managing housing facilities in two states. (Pl.'s Br. at 9.) According to Plaintiffs, PRD Management was operating an interstate entity by managing facilities in New Jersey and Pennsylvania since 2003. (Id.) Plaintiffs provided evidence that PRD Management's web site states that PRD Management has managed a property in Philadelphia, Pennsylvania known as Casa Farnese since 2003. (Id. citing Emery Cert. ¶ 22, Ex. V.)[9] In addition, Plaintiff presents evidence that Defendants do business with numerous vendors, both in state and out of state. (McCann Depo. Tr. at 128.) Thus, PRD Management is a "enterprise engaged in commerce."

Second, Plaintiffs argue that they have not been able to prove that Defendants have a gross volume of sales in excess of $500,000, as required by 29 U.S.C. § 203(a)(1)(A), because Defendants "have repeatedly refused to provide information

---

exercised control over employee benefits such as medical insurance and incentive bonuses. (Id.)

[9]  Defendants dispute that PRD Management was engaged in interstate commerce because it operated facilities in New Jersey and Pennsylvania during the relevant period of the lawsuit. Defendants argue that PRD Management only began operating the Pennsylvania facility, Casa Farnese, on November 24, 2003 - two months after Plaintiffs were terminated from their employment from PRD. (See Def.'s Reply Br. at 9-10, Ex. 1, Minutes of Board of Directors Meeting of Casa Farnese, dated November 13, 2003.)

regarding their revenue claiming privilege and irrelevancy."
(Pl.'s Br. at 6.) As such, Plaintiffs have been stymied from
providing evidence that PRD Management has the requisite sales
volume to come under the purview of the FLSA. (Id.)

Here, the Court finds that there are material issues of fact
in dispute regarding whether Defendants are an "enterprise"
engaged in interstate commerce. Specifically, Plaintiffs and
Defendants dispute (1) whether PRD Management operated a facility
in Pennsylvania during the time of Plaintiffs' tenancy/employment
at Mullen Manor and (2) whether PRD Management has a gross sales
volume of over $500,000. Viewing the facts of the case in a light
most favorable to Plaintiffs, this Court could find that PRD
Management, Mullen Manor and McGrath make-up an "enterprise
engaged in commerce" under 29 U.S.C. § 302(s)(1)(A) making their
operations come under the purview of the FLSA.

Plaintiffs have requested Defendants' sales and financial
information during discovery but have not been provided with it.
(Pl.'s Br. at 6, Letter from Dean Wittman to Robert G. Feldman,
Esq., dated 12/17/04, Ex. Y.) Instead, Defendants have taken the
position that such information is either privileged or
irrelevant. (Pl.'s Br. at 6.) Defendants have not illuminated the
Court with their reasoning why such financial information is
either privileged or irrelevant. Indeed, it would appear that
such information is very much relevant as Defendants cite the

lack of such data as one of the grounds in support of their argument that Plaintiffs have not proved enterprise coverage under the FLSA. (Def's Br. at 13.) Concerns that the financial information of gross sales volume during the relevant years is confidential can and should routinely be satisfied by providing the information subject to a protective order for counsel's use only in connection with this litigation and protecting from further publication, pursuant to Fed. R. Civ. P. 26(c). The enterprise coverage theory may be applicable to this case but, due to Defendants' unreasonable failure to produce documents related to Defendants' sales revenue requested by Plaintiffs during discovery, Plaintiffs have not had the opportunity to fully develop the facts necessary to oppose Defendants' motion on these grounds.[10]

### 2. Whether Defendants are an Enterprise Subject to the FLSA

Defendants argue that Mullen Manor is a non-profit corporation (owned by the Multiple Sclerosis Association of America (also a non-profit organization)) that does not compete with any private commercial enterprises in the area and therefore is exempt from the hour and wage requirements of the FLSA. (Def.'s Supp. Br. at 4-11.) Plaintiffs counter by arguing that no

---

[10] If counsel confer and are unable to agree to a reasonable and prompt production of Defendants PRD Management's financial information, either party is free to raise the discovery issue with the Court under L. Civ. R. 5.3 and 37.1(b).

exemption applies to Mullen Manor simply because it is a non-profit organization.  (Pl.'s Supp. Br. at 2.) Rather, according to Plaintiffs, the test for determining whether the FLSA applies to a non-profit organization is the "economic reality test" and under this test, it is still subject to the FLSA.  (Id. at 3.)

A number of courts have held that a non-profit agency is not covered by the FLSA unless it is shown that the non-profit organization engages in commercial activities in competition with other commercial enterprises.  See Tony and Susan Alamo Found. v. Dep't of Labor, 471 U.S. 290, 195-99 (1985) (developing the economic reality test to determine whether a non-profit organization is actually engaged in ordinary commercial activities).  Specifically, the Supreme Court has noted that "activities of eleemosynary, religious, or educational organization[s] may be performed for a business purpose.  Thus, where such organizations engage in ordinary commercial activities...the business activities will be treated under the Act [in the same manner] as when they are performed by the ordinary business enterprise."  Id. at 297 (quoting 29 C.F.R. § 779.214).[11]  Charging a fee for services does not necessarily

_____

[11]  In applying the Supreme Court's economic reality test, courts have determined that certain types of charitable organizations and shelters are not "enterprises" and therefore are not covered by the FLSA. See Briggs v. Chesapeake Volunteers in Youth Servs., 68 F. Supp. 2d 711, 715 (E.D. Va. 1999)(non-profit corporation that provided community service opportunities to juveniles did not compete with other commercial ventures, was

render a non-profit corporation a "business enterprise" under the FLSA. See Kitchings v. The Fla. United Methodist Children's Home, 2005 U.S. Dist. LEXIS 39204 (M.D. Fla. May 18, 2005). In applying the "economic reality test," the court's inquiry must focus on whether the non-profit enterprise is "primarily engaged in competition in the public with ordinary commercial enterprises." Murray, 908 F. Supp. at 339; see also Tony and Susan Alamo Found., 471 U.S. at 295-99. This Court will analyze whether each Defendant satisfies the "economic reality" test.

### a.    Defendant Mullen Manor

As a preliminary matter, the Court must point out an inconsistency in Defendants' briefing papers. First, "Mullen Manor" is simply the name of the apartment building where Plaintiffs worked and lived and is not a non-profit organization organized under §501(c)(3) of the Internal Revenue Code. Rather, Mullen Manor is owned by a corporation called MSAA Housing for the Disabled, Inc., which is a non-profit organization.

---

"strictly involved in eleemosynary activities," and therefore was not an enterprise under the FLSA); Joles v. Johnson County Youth Serv. Bureau, Inc., 885 F. Supp. 1169, 1174-75 (S.D. Ind. 1995)(finding non-profit organization providing temporary shelter and care services to troubled youth, was not engaged in a business purpose under the FLSA); Murray v. R.E.A.C.H. of Jackson County, Inc., 908 F. Supp. 337, 339 (W.D. N.C. 1995)(a shelter for victims of domestic violence and abuse did not fall within the scope of the FLSA as it was not engaged in public competition); Wagner v. Salvation Army, 660 F. Supp. 466 (E.D. Tenn. 1986)(holding that Salvation Army was not an enterprise under the FLSA since it did not engage in commercial activity).

(Certification of Robert G. Feldman ¶ 2, dated August 10, 2005, Ex. B, Def.'s Supp. Responses to Pl.'s Interrogatory ¶ 6; <u>see also</u> Feldman Cert. ¶ 1, dated 1/19/06, Ex. 5.) With this matter resolved, the Court finds that there is no evidence in this case that Mullen Manor (a/k/a MSAA Housing for the Disabled, Inc.) in any way competes with other commercial ventures. (<u>See</u> Feldman Cert., dated 1/19/06.)

Plaintiffs do not dispute that Defendant MSAA Housing for the Disabled, Inc. is a non-profit corporation that owns Mullen Manor or that Mullen Manor is funded by HUD and the Multiple Sclerosis Association of America. Plaintiffs also do not dispute that Mullen Manor provides affordable barrier-free housing for low-income tenants with disabilities and does not compete with any for-profit ventures in the Southern New Jersey area. (Def.'s Supp. Br. at 10 <u>citing</u> Feldman Cert. Ex. 5 and 6.) Based on the undisputed description of the activities and purpose of MSAA Housing for the Disabled, Inc. (a/k/a Mullen Manor), the Court finds that MSAA Housing for the Disabled, Inc. is not an enterprise as defined by the FLSA and thus, is not under the purview of the FLSA. Defendant Mullen Manor, a/k/a MSAA Housing for the Disabled, Inc., is therefore entitled to summary judgment upon all FLSA claims.

##### b.   Defendant PRD Management

The non-profit status of MSAA Housing for the Disabled, Inc.
however, does not innoculate PRD Management from the standards
set out in the FLSA.  PRD Management is a for-profit New Jersey
corporation in the business of managing property.  (McGrath Depo.
Tr. at 7, 9.)  Mullen Manor is simply one of the properties that
PRD Management has a contract to manage and where PRD Management
employs a number of its own employees (including Felicia McCann
and Walt Grossmick). (Id. at 9- 11, 14.)[12]

To determine whether an employment relationship exists for
purposes of the FLSA, the court must consider the underlying
"economic reality." Goldberg v. Whitaker House Coop., Inc., 366
U.S. 28 (1961).  Under Goldberg, plaintiffs were found to be
employees under the "economic reality" test because they were
working for one organization, making what the organization wanted
and were receiving compensation that the organization mandated.
See id. at 32.[13] While courts have identified several relevant

_____

[12]   Although paychecks to PRD Management employees working
at Mullen Manor may have had the words "Mullen Manor" printed at
the top and may have been paid from a separate bank account
maintained by PRD Management specifically for payments to
employees working at Mullen Manor, it is clear from the testimony
of James McGrath, president of PRD Management, that McCann and
Grossmick were employees of PRD Management. (Id.)

[13]    For purposes of the FLSA, compensation that an
employee receives need not be monetary in nature. See 29 U.S.C. §
203(m).  The FLSA defines "wage" as including board, food,
lodging and similar benefits customarily furnished by the

factors, the final determination depends not on "isolated factors but rather upon the circumstances of the whole activity." Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947).

Here, the Court finds that, like McCann and Grossmick, Genarie was an employee of PRD Management. Genarie entered into the Lease Agreement with PRD Management in which Genarie agreed to perform certain maintenance and monitoring services for PRD Management at Mullen Manor. (See Lease ¶ 1, Attachment No. 3.) As compensation for such services, Genarie was allowed to occupy an apartment located at Mullen Manor. (Id. at Attachment No. 2.) Thus, under the economic reality test established in Goldberg, Genarie was clearly an employee of PRD Management, and no genuine dispute of material fact remains on this point. Because Genarie was an employee for PRD Management and PRD Management - as a for-profit corporation - is not exempt from the purview of the FLSA, this Court will deny Defendant PRD Management's motion for summary judgment on this issue.[14]

---

employer to the employees. See id. Here, Genarie was an employee because he received lodging instead of cash in return for work that was required of him.

[14] Denial of PRD Management's motion for summary judgment is without prejudice to its right to renew same if, after providing the relevant financial discovery discussed above, its is able to demonstrate that it had gross volume of sales upon all properties managed in the relevant time period, or less than $500,000 annually.

### 3. Whether Coxon is an "Employee" of Defendants and Covered under the FLSA

Defendant next argues that, even if the Court finds that the FLSA is applicable to Plaintiffs' cause of action, the FLSA claims on behalf of Coxon should be dismissed because Coxon was a volunteer, and not an employee of Defendants. (Def.'s Br. at 17; see also Compl. ¶ 41-55.) According to Defendants, Coxon cannot be considered an employee of Defendants because she performed services for her own personal purposes, which were to assist Genarie in the performance of his contractual duties that he was unable to perform in a timely fashion due to competing employment obligations. (Id. at 18.) Plaintiffs argue that, as a matter of law, Coxon is an employee of Defendant PRD Management because she fits squarely into the definition of an employee under the "economic reality test" established by the Supreme Court in Goldberg. (Id.) Plaintiffs contend that, rather than simply performing work Genarie was required to do, Felicia McCann directly assigned Coxon a variety of extra-contractual tasks. (Id.)

Employees are covered by the FLSA only if a true employment relationship exists between the employee and employer. Kearns, The Fair Labor Standards Act, at 72. The issue of whether a worker is a volunteer or an employee is a question of law for the court to determine. See id.; see also Donovan v. DialAmerica Marketing, Inc., 757 F.2d 1286, 1292 (3d Cir. 1985). This Court

will first address whether Coxon fits the definition of an employee under the economic reality test. Next, the Court will address Defendants' argument that Coxon was a volunteer assisting Genarie, not an employee of PRD Management, and therefore, not covered by the FLSA.

   a.   **Coxon Fits the Definition of an "Employee"**

Section 203(g) of the FLSA defines the term "employ" to mean to "suffer or permit to work." 29 U.S.C. 203(g). In determining if an individual is an employee under the Act, courts examine all facts and circumstances involved - the "economic reality" of the relationship - to determine an individual's employment status. See Goldberg, 366 U.S. at 33; see Kearns, The Fair Labor Standards Act, at 72-73. The economic reality test requires the court to look to the following factors: (1) the degree of the employer's control over the worker's activity; (2) the worker's opportunity to exercise management skill to influence profit or loss; (3) the degree of skill and independent initiative required to perform the task; (4) the permanence or duration of the work relationship; (5) the degree to which the work is an integral part of the employer's business; and (6) the worker's investment in his tools, equipment, etc. See DialAmerica Marketing, Inc., 757 F.2d at 1383. The absence of one factor is not to be considered dispositive, see Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947), and the Court must analyze the

reasonableness of whether the person performing the service should expect compensation for the work performed.  See Todaro v. Township of Union, 40 F. Supp. 2d 226 (D.N.J. 1999).

Here, the Court agrees with Plaintiffs that Coxon satisfies the definition of an employee under the economic reality test. First, Defendant PRD Management exhibited a great deal of control over Coxon's work-related activities.  For example, McCann directly ordered her to perform certain monitoring and maintenance tasks (including performing apartment turnovers). (See Coxon Depo. Tr. 31.) McCann also criticized Coxon's work, stating that because McCann was the supervisor of Mullen Manor, she was Coxon's supervisor. (McCann Depo. Tr. at 65-66.)  Coxon also exhibited a significant degree of skill and independent initiative required to perform her work tasks. Such a degree of skill is evident by the fact that McCann asked Coxon to (1) do a number of tasks outside of the scope of the Lease, including cleaning floors, weeding, responding to pull cords from Mullen Manor residents and steam cleaning, (see Genarie Depo. Tr. 52-53, dated 3/29/05), and (2) bypassed Genarie and Grossmick in order to directly ask Coxon to take care of apartment turnovers. (See Genarie Depo. Tr. 43-44, dated 3/29/05.)  Coxon's employment - which began with her performing tasks for PRD Management soon after her 2001 tenancy at Mullen Manor began and ended upon her eviction in 2003 - also has the requisite permanence of a working

relationship.  Finally, it is clear that the work performed by Coxon was important to her employer's business situation.  With Coxon to perform apartment turnovers and various tasks outside of the scope of the Lease Agreement, Defendant PRD Management was spared the expense and inconvenience of hiring a janitorial service to perform such tasks.  (See McCann Depo. at 52.) Thus, Coxon's situation satisfies the economic reality test established in Goldberg.

          **b.    Coxon was Not a Volunteer for PRD Management**

While the definition of "employ" set out in the FLSA is broad, the definition is not intended to stamp all persons as employees "who, without any express or implied compensation agreement, might work for their own advantage on the premises of another."  Walling v. Portland Terminal Co., 330 U.S. 148, 151 (1947). The Supreme Court has held that a volunteer is "an individual who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, works in activities carried on by other persons...."  Tony and Susan Alamo Found., 471 U.S. at 295.  A district court must again employ the economic reality test to determine whether an individual is a volunteer or an employee.  The Department of Labor has stated that "individuals who volunteer or donate their services, usually on a part-time basis, for public service, religious or humanitarian objectives, not as employees and without

contemplation of pay, or not considered" employees of the organization that receives their services. U.S. Dep't of Labor, Wage & Hour Div., Employment Relationships Under the Fair Labor Standards Act, WH Pub. No. 1297, at 6 (1985).[15]

Courts in this District have held that the definition of "volunteer" must be viewed under a reasonableness standard and applied in "a common-sense way that takes into account the totality of the circumstances surrounding the relationship between the person providing the services and the entity for which the services are provided, in light of the goals of the FLSA." See Todaro, 40 F. Supp. 2d at 230 citing Rodriguez v. Township of Holiday Lake, 866 F. Supp. 1012, 1019 (S.D. Tex. 1994). The Todaro court also noted that a volunteer must not be a victim of coercion or undue pressure from the organization for whom the employee is performing services, but perform his or her duties for various personal reasons. (Id.)

It is clear to this Court that Coxon is not a volunteer. It cannot be said that Coxon is working without "promise or expectation of compensation" as she was receiving compensation in the form or an apartment in exchange for her services. Further, Coxon's work was not done as a "public service" or with

---

[15] Examples of volunteers, according to the Department of Labor's publication, include students who volunteer at nursing homes and hospitals, parents who assist at their children's schools, and camp counselors who participate in youth programs. Id. at 6-7.

"religious or humanitarian objectives." Nor was Coxon's work
performed in the absence of coercion or undue pressure. Rather,
Coxon's work was performed to appease Mullen Manor's management's
demands and to retain her position and the apartment she shared
with her daughter and Genarie. That Coxon would cover for Genarie
and work with him as a team was also in the contemplation of all
parties when this arrangement was created as discussed above.
Taking into account the totality of the circumstances surrounding
the relationship between PRD Management, Genarie and Coxon, this
Court concludes that no reasonable jury would view Coxon as a
volunteer.

### 4. Whether Plaintiffs' FLSA Claim Should be Dismissed because the Benefits are De Minimis

Defendants argue that, even if the Court finds that
Plaintiffs have a cognizable claim under the FLSA, Plaintiffs
have not satisfied their burden of proof that their claims are
not de minimis. (Def.'s Br. at 21.) Defendants also argue that
Plaintiffs' FLSA claims fail because Plaintiffs cannot
demonstrate to any reasonable degree of certainty that they
worked any time for which they were not lawfully compensated.
(Id.) Plaintiffs counter by arguing that their claims are not de
minimis and Plaintiffs have indeed provided both (1) a detailed
account of weekly monitoring and maintenance tasks to explain how
Plaintiffs worked an average of 21 hours and 45 minutes per week
- seven hours and 45 minutes above what Plaintiffs believe they

contracted for and (2) a detailed account of the additional tasks assigned to Plaintiffs.[16]

To recover damages for uncompensated hours, an employee must show that the amount of uncompensated hours the employee worked was not de minimis. See, e.g. Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 692 (1946); see also Albanese v. Bergen County, 991 F. Supp. 410 (D.N.J. 1997). In Albanese, the District Court for District of New Jersey adopted a three-part test originally employed by the Second and Ninth Circuits for determining whether compensable time is de minimis under the FLSA: (1) the administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and

_____

[16] At oral argument, the undersigned asked Plaintiffs to provide the Court with a supplemental brief quantifying Plaintiffs' claim of damages. Plaintiffs submitted a supplemental brief and an attorney certification quantifying its damages. (See Pl.'s Supp. Br., Emery Cert. ¶ 1, Ex. AA.) In a certification attached to its supplemental brief, Plaintiffs provide evidence that Genarie worked a total of 2,522 hours and 39 minutes of unpaid, extra work between September of 2001 and September of 2003. Coxon worked 399 hours and 20 minutes of unpaid, extra work between September of 2001 and September of 2003. These hour totals are in addition to the 21 hours and 45 minutes Plaintiffs spent working each week on monitoring and maintenance tasks contained in the Lease Agreement. (See Emery Cert. ¶ 1.) Each entry states (1) the week the work took place, (2) the time worked by each Plaintiff and (3) the task or tasks performed by each Plaintiff. Such a detailed breakdown of time worked contained in an attorney certification, based upon the compilation of time records, is sufficient to shift the burden to Defendants to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the evident of Plaintiffs. See Wirtz v. Lieb, 366 F.2d 412, 414 (10th Cir. 1966).

(3) whether the work was performed on a regular basis.  Albanese,
991 F. Supp. at 422 (citing Reich v. New York City Transit Auth.,
45 F.3d 646, 652 (2d Cir. 1995) and Lindow v. United States, 738
F.2d 1057, 1062 (9th Cir. 1984). There is no rigid rule or
precise mathematical formula for applying the de minimis
doctrine, but the size of the aggregate claim must be considered.
See Lindow, 738 F.2d at 1062-64.

Defendants argue that Plaintiffs have not met their burden
of proof here, having failed to demonstrate to any reasonable
degree of certainty that they worked any time for which they were
not compensated and that any uncompensated hours worked were not
de minimis. (Def. Br. at 22-23.)  According to Defendants,
Plaintiffs also cannot quantify their claims in terms of unpaid
hours and failed to submit an expert report regarding the
valuation of their claims. (Def.'s Br. at 23 citing Def.'s
Statement of Material Facts ¶¶ 125-45.)  Because Plaintiffs have
failed to carry their burden of proof with regard to proving that
their claim is not for a de minimis amount, Defendants argue, the
FLSA is not applicable to this matter and Plaintiffs' claims
should be dismissed.  (Def.'s Br. at 23.)

Here, the Court finds that material issues of fact exist
with respect to at least two of the Albanese factors.  Plaintiffs
have indeed provided a detailed accounting of both (1) the time
Plaintiffs spent performing all of the weekly and daily duties

33

listed in Attachment No. 3 of the Lease Agreement (demonstrating that these duties took slightly less than 22 hours a week to perform) and (2) a breakdown of the hours spent performing extra-contractual work on behalf of Defendants. (See Pl.'s Br. at 15-18 and Emery Cert. ¶ 1., Ex. AA.) Thus, Plaintiffs' aggregate non-compensated work time amounted to (1) almost eight hours per week for two years and (2) over 2,522 hours (for Genarie) and 399 hours (for Coxon) of extra work for Genarie and Coxon, respectively.  Such an amount of uncompensated time, in the aggregate, was not de minimis. However, Defendants (a) dispute that Plaintiffs worked the additional hours each week; and (b) contest the accuracy and consistency of the Plaintiffs' account of hours spent doing extra-contractual work.

Moreover, Plaintiffs argue that the testimony of both Plaintiffs Coxon and Genarie regarding the amount of time it took to perform their weekly job duties and the breakdown of the extra-contractual work they were required to perform demonstrates that the uncompensated work claimed by Plaintiffs was work "performed on a regular basis" as required by the third prong of the Albanese test. (Id. at 15-18.) This fact is disputed by Defendants.  Defendants argue that Coxon only did occasional additional work (for example, as many as six apartment turnovers in two years).  While these facts remain in dispute, granting of

summary judgment on the issue of whether Plaintiffs' claims under the FLSA would be de minimis is inappropriate.[17]

### 5. Whether Genarie's Time Spent "On-Call" is Compensable under the FLSA

The Court next turns its attention to the issue of whether Genarie's time spent "on-call" as part of his job duties is compensable under the FLSA.[18] Under certain circumstances, time spent on-call is compensable under the FLSA. See Armour & Co. V. Wantock, 323 U.S. 126 (1944). The Department of Labor's regulations regarding the compensability of on-call time state that if an employee's time on-call away from the employer's premises is so restricted that it interferes with personal

---

[17] The Court's decision to deny summary judgment with respect to this issue is consistent with the rule established in Albanese. The court in Albanese, upon a motion for summary judgment by the employees, ultimately held that a determination of whether the three factors outlined were met was a question of fact. See Albanese, 991 F. Supp. at 421-22. Specifically, the court held that at trial, the employee will have to demonstrate that the amount of time spent working "off-the-clock" was not de minimis and that "the de minimis doctrine will be a critical inquiry for the jury when it considers the time plaintiff[] spent" performing uncompensated work. Id. at 422.

[18] The issue of how a party spends his on-call time is one of fact and therefore cannot be resolved on summary judgment. See Ingram v. County of Bucks, 144 F.3d 265, 267 (3d Cir. 1998). However, once there is no genuine issue of material fact about how the party spends his on-call time, a court may determine whether a party's activities exclude him from the overtime benefits of the FLSA. See id.("the determination of whether the plaintiff's activities exclude him 'from the overtime benefits of the FLSA is a question of law.'") citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986). Such a question of law can be properly resolved on summary judgment. See id.

pursuits, the employee is entitled to compensation under the FLSA. See 29 C.F.R. § 553.221(c). For example, time spent at home on-call may or may not be compensable depending on whether the restrictions related to being on-call "preclude using the time for personal pursuits."  29 C.F.R. § 553.221(d).

Defendants argue that, an analysis of the Ingram factors "mandates the conclusion that...Genarie's on-call time did not restrict him to the extent that he could not engage in substantial numerous personal pursuits." (Def.'s Br. at 38.) Rather, Genarie was free to engage in personal activities and come and go as he pleased - activities that weigh in favor of a finding of Genarie's on-call time as not compensable.  (Id.) At oral argument, Plaintiffs conceded that Genarie was free to engage in personal pursuits while on call, and there is no evidence Genarie was required to leave his full-time job in order to actually perform "on-call" duties.  Thus, this Court finds that Genarie's time spent on call was not compensable under the FLSA.  As such, the Court will grant Defendants' motion for summary judgment as to this issue.

### 6. Whether Plaintiffs' Claims are Limited to a Two-year Statute of Limitation

Under the Portal-to-Portal Act of 1947, an action for unpaid minimum wages and unpaid overtime compensation under the FLSA will be barred unless "commenced within two years after the cause of action accrued." 29 U.S.C. § 255(a). However, "a cause of

action arising out of a willful violation may be commenced within three years after the cause of action accrued." See 29 U.S.C. § 255(a). Moreover, "[i]t is well settled that '[a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed.'" Mitchell v. Lancaster Milk Co., 185 F. Supp. 66, 70 (M.D. Pa. 1960); see also Balzano v. Township of North Bergen, 649 F. Supp. 807, 810 (D.N.J. 1986). Thus, Plaintiffs' claim "for overtime compensation accrued at each payday after the alleged overtime was worked." Angulo v. Levy Co., 568 F. Supp. 1209, 1215 (N.D. Ill. 1983). According to Plaintiffs then, Plaintiffs' claims for overtime and unpaid minimum wage earned within the two years immediately prior to their filing the Complaint on May 3, 2004, are timely. See id.

Here, Plaintiffs are seeking compensation for overtime earned between September 2001 and September 2003. At minimum, Plaintiffs' claim for overtime and unpaid minimum wage earned since May 3, 2002 may proceed as Plaintiffs filed their Complaint on May 3, 2004. However, the question becomes whether Plaintiffs' claim for overtime and unpaid minimum wage accrued from September 1, 2001 through May 2, 2002 are barred by § 255. Plaintiffs argue that all their claims are timely because the statute of limitations was equitably tolled due to Defendants' conduct.

(Pl.'s Br. at 25-26). Specifically, tolling is appropriate

because "Defendant PRD [Management] repeatedly assured [Genarie]

that the compensation provided for in the [Lease] Agreement was

proper." (Id.) Furthermore, Plaintiffs argue that, because

Plaintiffs did not receive any actual payday, the tenancy of

Plaintiffs would cause the statute of limitations to toll. (Id.

at 25.)

Read into every federal statute of limitation, including the

FLSA, the equitable tolling doctrine applies in three principal

situations in this circuit. See Miller v. Beneficial Mgmt. Corp.,

977 F.2d 834, 845 (3d Cir. 1992). Specifically, tolling is

appropriate if: (1) the defendant has actively misled the

plaintiff; (2) the plaintiff has 'in some extraordinary way' been

prevented from asserting his rights; or (3) the plaintiff has

timely asserted his rights mistakenly in the wrong forum. See id.

(internal quotations omitted).[19] The Third Circuit has explained

that equitable tolling is appropriate "where the employer's own

acts or omissions have lulled the plaintiff into foregoing prompt

attempts to vindicate his rights." Meyer v. Riegel Prods. Corp.,

---

[19]   In Miller, the plaintiff alleged that defendant's
senior vice president repeatedly assured her that her pay was on
par with her colleague and that she deserved and would receive a
promotion. See id. The court held that issues of material fact
made summary judgment on the issue inappropriate. Stating that
even if the plaintiff's claims "were not otherwise timely, these
allegations in support of equitable tolling should have precluded
summary judgment on statute of limitations grounds." Id.

720 F.2d 303, 309 (3d Cir. 1983). Additionally, the Circuit has instructed that an employer's actions need not be "egregious acts of active deception" in order to toll the limitations period. Miller, 977 F.2d at 845 citing Meyer, 720 F.2d at 307.[20] Here, Plaintiffs allege that Defendant PRD Management repeatedly assured Genarie that the compensation provided for in the Lease Agreement was proper. (Pl.'s Br. at 26.)

Unlike Miller, however, Plaintiffs have not provided evidence that PRD Management "lulled" Plaintiff into foregoing attempts to vindicate their rights. Here, there were no repeated assurances that an increase in pay was coming or that PRD Management would, in the future, make Plaintiff whole for past work as the employer had done in Miller. Instead, by telling Genarie that his pay was proper, PRD Management openly communicated its refusal to pay Plaintiff more. Such an openly communicated refusal should have triggered the dispute. Thus, the Court will grant Defendants' motion for summary judgment as to this issue and the Court will bar all Plaintiffs' claims for overtime and unpaid minimum wage accrued from September 1, 2001 through May 2, 2002 under § 255.

---

[20] The Miller court took no view as to whether equitable tolling applies, but only that material factual disputes made summary judgment on the issues inappropriate. Miller, 977 F.2d at 845.

## 7.   Plaintiffs' FLSA Claim Based on Defendants' Alleged Failure to Maintain Employment Records.

Plaintiffs allege that Genarie and Coxon were damaged by Defendants' failure to keep employment records as required by the FLSA resulting in lost wages, overtime compensation and social security and unemployment compensation.  (Compl. 29, 30, 34, 35, 39, 40, 44, 45, 49, 50, 54, 55.)  Defendants argue that they are entitled to summary judgment as Plaintiffs cannot sustain its burden of demonstrating that they performed any work for which they were not properly compensated.  (Def.'s Br. at 29.)

Under 29 U.S.C. § 211(c) of the FLSA, an employer is required to "make, keep, and preserve such records of the persons employed by [it]...."[21]  Violation of this record-keeping provision does not result in a penalty per se, but an employer's failure to produce evidence of the hours an employee worked and wages paid may result in the court having to approximate damages. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946); Martin v. Selker Bros., Inc., 949 F.2d 1286, 1297 (3d Cir. 1991).  Under Anderson, if an employer's records are inadequate, the court must deem that an employee has carried out

---

[21]  The regulations promulgated by the Department of Labor require employers to preserve, for three years, records of the (1) total daily and weekly hours employees work; (2) employees' regular hourly rates of pay for each week that overtime is worked; (3) total daily or weekly straight time earnings and (4) total weekly premium pay for overtime hours.  See 29 C.F.R. §§ 516.2 - 516.5.

its burden if the employee "proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson, 328 U.S. 687-88. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or "with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." Id. If the employer fails to produce such evidence, the court may then award damages to the employee "even though the results may be only approximate." Id.

Despite Defendant PRD Management's failure to provide detailed employment records to Plaintiffs during discovery, this Court finds that Plaintiffs - through both the detailed account in Ex. AA to the Certification of Christina Y. Emery, Esq. (submitted with its supplemental brief) and the details provided in its brief in support of its cross-motion - have presented sufficient evidence of the amount and extent of work, as a matter of just and reasonable inference. Plaintiffs have presented (1) a certification from Plaintiffs' counsel providing a weekly breakdown detailing Plaintiffs' additional hours worked, which Plaintiff worked which hours and which tasks were performed during the work, (Emery Cert. ¶ 1, Ex. AA), and (2) a detailed account, with citations to testimony from Genarie and Coxon, of the time it took Plaintiffs to complete the monitoring and

maintenance work outlined in Attachment No. 3 to the Lease

Agreement.  (Pl.'s Br. at 15-18.)[22] As such, Plaintiffs'

production of such detailed accounts of the work that they

performed is sufficient to overcome its initial burden of proof

and avoid summary judgment on their FLSA claims for unpaid wages

and overtime due to Defendant PRD Management's failure to keep

employment records.

### 8. Plaintiffs' FLSA Claim Based on Defendants' Alleged Failure to Pay Income Tax Withholdings, Social Security, and Unemployment Taxes on the Value of Lodging

Plaintiffs allege that they were damaged by Defendants'

failure to withhold sums for income taxes, Social Security and

unemployment tax ("FUTA") contributions on the value of the

lodging that Plaintiffs received as compensation for their work

at Mullen Manor. Defendants argue that they did not need to

withhold such sums because, under U.S. tax laws, "the value of

lodging is not subject to income tax withholdings and Social

Security, Medicare and FUTA taxes" if the lodging is furnished

(1) for the employer's convenience, (2) on the employer's

premises and (3) the employee is required to accept such lodging

as a condition of his or her employment. Int. Rev. Serv. Circular

---

[22]  As more fully discussed in Section III.4, supra, Defendants dispute both the accuracy and consistency of Ex. AA to the Emery Certification (attached to Plaintiffs' supplemental brief) and the reasonableness of the time Plaintiffs contend it took them to perform the monitoring and maintenance tasks set forth in Attachment No. 3 to the Lease Agreement.

E, Pub. 15, I.R.S. §1:119-1; see, generally, Commissioner v. Kowalski, 434 U.S. 77, 84-88 (1977).

Defendants are correct that an employer need not withhold income taxes, pay Social Security, Medicare or FUTA if the lodging is furnished for the employer's convenience, on the employer's premises, and as a condition of employment. Indeed, I.R.S. Publication 15-B (titled Employer's Tax Guide to Fringe Benefits) lists "lodging on [the employer's premises] as a fringe benefit and that such excluded benefits are not subject to federal income tax withholdings ...[and], in most cases,...not subject to social security, Medicare, or [FUTA] tax...." Int. Rev. Serv. Circular E, Pub. 15-B (2005).

An employer need not withhold these amounts or make such payments if the provision of lodging complies with the I.R.S.'s "convenience of the employer" test. The failure of the employee to meet any one of the three prongs of the test would require the value of the lodging to be included in the wage earner's taxable income. See Dole v. Commissioner, 43 T.C. 697, 703 (1965).[23]

The Court finds that all three prongs of the test, however, are met here. Plaintiffs' lodging was furnished on the business premises of Mullen Manor as an apartment within the building. Moreover, the lodging was furnished for the convenience of the

---

[23]    Lodging also includes items such as heat, electricity, gas, water and sewer services. See Rev. Rul. 68-579, 1968-2 C.B 6 (1968).

43

employer so that Genarie would be on premises after regular business hours in the event of an emergency. Third, Genarie was required to accept the apartment at Mullen Manor as a condition of his employment. Because these facts are not disputed by Plaintiffs, this Court grants partial summary judgment to Defendants on the issue of whether Plaintiffs can claim that Defendants failed to withhold sums for taxes, Social Security and unemployment tax contributions for the value of the lodging that Plaintiffs received.

## B. Plaintiffs' Claims under the New Jersey Wage and Hour Law (Counts VII through XII) [24]

In Counts VII through XII of the Complaint, Plaintiffs allege that Plaintiffs are owed unpaid back wages and overtime under the New Jersey Wage and Hour Law ("NJWHL"). Under the NJWHL, "[e]very employer shall pay to each of his employees" a certain minimum wage "for 40 hours of working time in any week and 1 ½ time such employee's regular hourly wage for each hour of

---

[24]     Discussed in Section III.A.2.a, <u>supra</u>, Defendants raised a "non-profit agency exemption" to the FLSA and the Court concluded that, under the doctrine established in <u>Tony and Susan Alamo Found. v. Dep't of Labor</u>, Defendant Mullen Manor is exempt from the FLSA. <u>See</u> 471 U.S. 290, 195-99 (1985). The Court notes that Defendants have not raised such a "non-profit agency exemption" argument to Plaintiffs' parallel claims under the NJWHL. This Court is not aware of any such exemption and, as the issue has not been raised by either party, the Court will allow Plaintiffs' claim against Mullen Manor to proceed under the NJWHL.

working time in excess of 40 hours in any week...." N.J.S.A. 34:11-56a4.[25] Furthermore, under the NJWHL:

> [A]ny employee [who] is paid by an employer less than the minimum fair wage to which such employee is entitled under the provisions of this act or by virtue of a minimum fair wage order such employee may recover in a civil action the full amount of such minimum wage less any amount actually paid to him or her by the employer....

N.J.S.A 34:11-56a25. "Wages" received by an employee include "any moneys...including...the fair value of any food or lodging supplied by an employer to an employee." N.J.S.A. 34:11-56a1(d). Claims under the NJWHL, however, are limited by a two-year statute of limitations and the NJWHL does not contain a provision similar to the FLSA which makes an exception for willful conduct. See Troise v. Extel Communs., 345 N.J. Super. 231 (App. Div. 2001); Moeck v. Gray Supply Corp., 2006 U.S. Dist. LEXIS 511 *10 (D.N.J. January 5, 2006.)

Defendants raise three arguments in support of their motion for summary judgment as to Plaintiffs' claims of unpaid back wages and overtime under the NJWHL. See N.J.S.A. § 34:2-21.6. Defendants first argue that Plaintiffs have failed to meet their burden of proving that they ever performed work for which they were not fully compensated. (See Def.'s Br. at 39.) Second,

---

[25] Under the NJWHL, an "employee" includes any individual "employed by an employer" and an employee includes "any individual employed by an employer." N.J.S.A. 34:11-56a1(g), (h).

Defendants' argue that Plaintiffs have failed to demonstrate that Defendants' records did not contain the requisite information such as Plaintiffs' name, number of hours worked and amount of wages paid as required by the NJWHL (N.J.S.A. 34:2-21.6). See id. Third, Defendants argue that Plaintiffs may not bring an action under the NJWHL because the NJWHL does not provide a private cause of action for alleged record keeping violations under N.J.S.A. 34:11-56a20 as only the Commissioner of Labor may levy administrative penalties (and then only after a notice hearing) under N.J.S.A. 34:11-56a22. (Def.'s Br. at 39.).[26]  Plaintiffs respond to Defendants' argument only by stating that Plaintiffs rely on the other arguments in its brief in support of its claims under the NJWHL "since the burden of proof is the same."  (Pl.'s Br. at 30.)

The Court finds here, as it did under Plaintiffs' FLSA claims, that material issues of fact exists with respect to the accuracy and legitimacy of Plaintiffs' account of both (1) the time Plaintiffs spent performing all of the weekly and daily

---

[26]    N.J.S.A. 34:11-56a20 states, in pertinent part:

Every employer of employees subject to this act shall keep a true and accurate record of the hours worked by each and the wages paid by him to each and shall furnish to the commissioner or the director or their authorized representative upon demand a sworn statement of the same.  Such records shall be open to inspection by the commissioner or the director or their authorized representative at any reasonable time.

duties listed in Attachment No. 3 of the Lease Agreement and (2) the breakdown of the hours spent performing extra-contractual work on behalf of Defendants. (See Pl.'s Br. at 15-18.) Viewing the facts most favorably to Plaintiffs, this Court finds that Plaintiffs have met their initial burden of proof of demonstrating that they performed work for which they were not fully compensated under the NJWHL. (Emery Cert. ¶ 1.)

In so holding, this Court follows the holding of other New Jersey state courts who, when determining whether a plaintiff has established a prima facie case under NJWHL, have held that although the law "abhors damages based on mere speculation," a plaintiff need not prove damages with precision where it is impractical or impossible to do so. See Mosely v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (N.J. Super. 2002) quoting Caldwell v. Haynes, 136 N.J. 422, 442 (1994). Specifically, damages need only be proved with "such certainty as the nature of the case may permit, laying a foundation which will enable the trier of facts to make a fair and reasonable estimate" of damages. See Mosely, 356 N.J. Super. at 128 quoting Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987). As the Court held in Mosely, this Court holds that, viewing evidence on damages in the light most favorable to Plaintiff, Plaintiffs have submitted sufficient evidence for a jury to calculate damages without speculation. (See Emery Cert. ¶ 1.)

While Plaintiffs' claim under N.J.S.A. 34:11-56a25 can move ahead, this Court finds that Plaintiffs may not proceed with a cause of action against Defendants under the record-keeping provision of the NJWHL, see N.J.S.A. 34:11-56a20, as there is no private right of action under the NJWHL for record-keeping violations. See N.J.S.A. 34:11-56a22.  Indeed, an employee's private right of action is limited by N.J.S.A. 34:11-56a25 to the minimum fair wage claims for pay and overtime and only the New Jersey Commissioner of Labor may levy administrative penalties under N.J.S.A. 34:11-56a20.[27]

## IV.  CONCLUSION

For the foregoing reasons, this Court grants Defendants' motion for summary judgment in part as to the issues of (1) whether Genarie's time spent on-call is compensable under the Fair Labor Standards Act; (2) whether Defendant Mullen Manor is exempt under claims arising under the FLSA; (3) whether Plaintiffs' claims under the FLSA and NJWHL with respect to compensation for services performed prior to May 3, 2002 are time barred; (4) whether Defendant PRD Management was required to pay

---

[27]  While employees cannot get a separate recovery for record-keeping violations, the employer's duty to keep records under the NJWHL is inherent in its obligations to pay the fair minimum wage, and there may be certain evidentiary presumptions available to Plaintiffs if Defendant PRD Management breached its record-keeping responsibilities under the NJWHL.  However, the Court need not decide what, if any, evidentiary presumptions will be available to Plaintiffs as the parties have not raised or briefed this issue in their cross-motions for summary judgment.

income tax withholdings, social security and unemployment taxes on the value of Plaintiffs' apartment; and (5) whether Plaintiffs may proceed with a claim of record-keeping violations under the NJWHL, and judgment will be entered for Defendants upon these claims. This Court also grants in part Plaintiffs' cross-motion for partial summary judgment as to the issue of the employment status of Coxon, finding that she is an employee of Defendant PRD Management.  This Court denies both Defendants' motion and Plaintiffs' cross-motion for summary judgment as to all other issues.

The accompanying Order is entered.




**February 17, 2006**          **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                               United States District Judge